UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
JENNIE ROSARIO,                         :
                        Plaintiff,      :
                                        :       11 Civ. 8720 (DLC)
            -v-                         :
                                        :       OPINION & ORDER
THE RECEIVABLE MANAGEMENTS SERVICES     :
CORPORATION and OXFORD HEALTH PLANS     :
(NY), INC.,                             :
                        Defendants.     :
                                        :
----------------------------------------X

APPEARANCES

For Plaintiff:
Anthony M. Bentley
A.M. Bentley, PC
116 West 72nd St.
New York, NY 10023-3315

For Defendants Oxford Health Plans (NY), Inc. and Oxford Health
Plans LLC:
Jacob Z. Zambrzycki
Crowell & Moring LLP
590 Madison Ave.
20th Floor
New York, NY 10022


DENISE COTE, District Judge:

     Plaintiff Jennie Rosario ("Rosario") brings this action

pursuant to Section 349 New York General Business Law ("Section

349") and the Fair Debt Collection Practices Act ("FDCPA").

Defendants Oxford Health Plans (NY), Inc. ("Oxford") and Oxford

Health Plans LLC ("Oxford LLC") move for dismissal pursuant to

Fed. R. Civ. P. 12(b)(6), and for sanctions pursuant to Fed. R.

Civ. P. 11.  For the following reasons, the motion to dismiss
and the motion for sanctions are granted.


BACKGROUND

I.  Litigation History

     For purposes of ruling on the motion for sanctions, this
Opinion recounts the history of litigation against Oxford and/or
Oxford LLC pursued by Rosario and her counsel Anthony M. Bentley
("Bentley").  On September 3, 2010, Bentley commenced a civil
action on behalf of Rosario in the Civil Court of the City of
New York, New York County, captioned <u>Jennie Rosario v. Oxford
Health Plans (NY), Inc.</u>, Index No. 048798/10, seeking $16,102.20
from Oxford.  The pleading in this action consisted of seven
words: "1. Breach of Contract; 2. Violation of NYGBL § 349."  On
September 27, Bentley filed a Notice of Removal in the United
States District Court for the Northern District of New York.  In
the Notice of Removal, Bentley indicated that claims in this
action were brought pursuant to the Medicare Act.

     On October 7, Oxford mailed a letter to the District Court
for the Northern District of New York regarding the impropriety
of removal on the basis that 1) removal is a tool reserved for
defendants, 2) removal is proper only "in the district court of
the United States for the district and division within which" a
State court action is pending, 28 U.S.C. § 1446(a), and 3)

2

plaintiff did not provide proper notice to adverse parties of the removal.  Rosario v. Oxford Health Plans (NY), Inc., Case No. 1:10-cv-01158 (N.D.N.Y.) ("NDNY Case"), Doc. 3.  On October 8, the District Court remanded the case back to state court for the reasons articulated in Oxford's letter.  NDNY Case, Doc. 4.

On October 12, 2010, defendants removed the case to the proper district court, the Southern District of New York.  On October 19, Oxford moved to dismiss the case, Rosario v. Oxford Health Plans (NY), Inc., 10-cv-7789 (JSR) (S.D.N.Y.) ("Rosario I"), for failure to state a claim.  In opposing the motion to dismiss, Bentley argued, inter alia, that he did not need to comply with federal pleading standards because state procedural law trumps federal procedural law in federal court, and that notwithstanding his prior claims that the case was brought pursuant to the Medicare Act and his previously-filed notice of removal, the case should be remanded to State court.  On December 14, the action was dismissed without prejudice for failure to exhaust administrative remedies and because the "bare bones" complaint was "plainly inadequate."

On May 22, 2011, Bentley filed a second action on behalf of Rosario against Oxford.  This action was brought in the Supreme Court of the State of New York, County of New York, seeking $30,000 ("Rosario II").  The form summons with notice stated that the nature of the action was "Pursuant to Order of the Hon.

Jed S. Rakoff, U.S.D.J. dated 12/9/2010, Case No. 10 Civ. 7789
(JSR) (SDNY)," and that the relief sought was "1. Accounting; 2.
Class Action."  Judge Rakoff, the district judge assigned to
Rosario I, never ordered the plaintiff to file Rosario II.
Rather, December 9, 2010 was the date Rosario I was <u>dismissed</u>.
The Rosario II form summons with notice contained no other
information on the nature of the action or the relief sought.

Oxford demanded a complaint from the plaintiff, which was
served on July 5.  The State court concluded that the complaint
was "lacking in clarity," but appeared to base liability on the
fact that Oxford issued dividend checks to the plaintiff that
expired after six months.  Oxford moved to dismiss the complaint
on August 15.  On November 9, the State court dismissed Rosario
II without prejudice for failure to state a cause of action for
which relief can be granted.

On October 21, 2011, Bentley filed the present action in
State court, seeking $6,000 from Oxford and defendant The
Receivable Management Services Corporation ("RMS").  The
complaint, in its entirety, made the following allegations:

    1. Declaratory Judgment as to joint liability;
    2. Violation of FDCPA (see annexed Exhibit 'A')
    3. Class Action 15 U.S.C. § 1692k

On November 30, Oxford and RMS removed the action to this
Court.  On December 7, 2011, Oxford filed a motion to dismiss
for failure to state a claim and to dismiss Oxford as an

4

improper party.  By Order of December 13, plaintiff was directed
to file any Amended Complaint by January 2 and instructed that
she would have no further opportunity to amend her pleadings.
On January 3, 2012, Bentley filed the Amended Complaint.

    On February 7, Bentley filed a "motion to assume
supplemental jurisdiction."  This motion appeared to request
that the Court exercise appellate jurisdiction over Rosario II,
the State court action dismissed on November 9, 2011.  On
February 21, Oxford and Oxford LLC moved to dismiss the Amended
Complaint, and RMS filed its Answer.  That same day, Oxford
served plaintiff with a motion for sanctions for violating Rule
11, Fed. R. Civ. P.

    The motion for sanctions alleged that both the motion to
assume supplemental jurisdiction and the Amended Complaint
constituted frivolous filings.  Bentley responded by withdrawing
the February 7 motion to assume supplemental jurisdiction.
Bentley did not, however, withdraw or correct the Amended
Complaint.  Instead, on March 10 Bentley submitted a proposed
Second Amended Complaint as an exhibit to his opposition to the
motion to dismiss.  Oxford filed the motion for sanctions on
March 19.  The motion to dismiss became fully submitted on March
20 and the motion for sanctions became fully submitted on April
16.

II.  Plaintiff's Allegations

The following facts are taken from the plaintiff's Amended Complaint unless otherwise noted, and are taken to be true for purposes of the motion to dismiss.  LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). On January 28, 2010, Oxford wrote a letter to the plaintiff describing a New York State requirement that it pay her a "dividend" (the "January Letter").  The plaintiff alleges that Oxford failed to actually pay this dividend and that this failure constitutes an unlawful deceptive business practice pursuant to § 349 of the NYGBL.  According to exhibits attached to plaintiff's motion papers, however, Oxford mailed the plaintiff checks for "dividends" totaling $150.80 but the plaintiff failed to cash these checks before they expired six months later.

The Amended Complaint also alleges that Oxford is a debt collector under the FDCPA and that Oxford has engaged in "longtime manipulation of the 'Stop Loss Trust Fund.'"  The plaintiff does not explain what the "Stop Loss Trust Fund" is or how Oxford has manipulated it.  At some point not specified in the Amended Complaint, Oxford terminated the plaintiff's health insurance plan for non-payment of premiums.

After RMS issued a debt collection notice to the plaintiff, the plaintiff alleges that RMS received requests for validation

6

material from the plaintiff on various dates from May to July
2011.  RMS did not respond to these requests and continued to
send debt collection notices to the plaintiff.  The plaintiff
further alleges that Oxford LLC owns the copyright to the
letterhead style under which the January Letter was written, and
that RMS is attempting to collect a debt on Oxford LLC's behalf.
The Amended Complaint seeks declaratory and injunctive relief,
but does not appear to seek damages.

DISCUSSION

I.  Motion to Dismiss

The Amended Complaint is a confusing document.  It fails to
clarify precisely who the plaintiff intends to accuse of what.
By all appearances, however, the plaintiff intends to allege
that Oxford violated § 349 of the NYGBL and the FDCPA by failing
to pay the plaintiff her "dividends" as promised and then
seeking to enforce plaintiff's resulting debt obligation, and
that Oxford LLC is liable because it is Oxford's corporate
parent.  Oxford and Oxford LLC have moved to dismiss the Amended
Complaint on grounds that it fails to state a claim against
Oxford pursuant to either the FDCA or § 349 of the NYGBL, and
that it fails to state any claim against Oxford LLC.

Under the pleading standard set forth in Rule 8(a)(2), a
complaint must include a "short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ.
P. 8(a)(2). "[A] plaintiff is required only to give a defendant
fair notice of what the claim is and the grounds upon which it
rests." Leibowitz v. Cornell Univ., 445 F.3d 586, 591 (2d Cir.
2006). Rule 8 is fashioned in the interest of fair and
reasonable notice, not technicality, and therefore is "not meant
to impose a great burden upon a plaintiff." Dura Pharms., Inc.
v. Broudo, 544 U.S. 336, 347 (2005).

A trial court considering a Rule 12(b)(6) motion must
"accept all allegations in the complaint as true and draw all
inferences in the non-moving party's favor." LaFaro v. New York
Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009)
(citation omitted). To survive a motion to dismiss, "a
complaint must contain sufficient factual matter, accepted as
true, to state a claim to relief that is plausible on its face."
Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citation
omitted). The court is "not bound to accept as true legal
conclusions couched as factual allegations," id. at 1950-51, and
"conclusory allegations or legal conclusions masquerading as
factual conclusions will not suffice to defeat a motion to
dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d
328, 337 (2d Cir. 2006) (citation omitted).

A.   NYGBL § 349

Section 349 of the NYGBL declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York State. To state a claim under § 349 of the NYGBL, a plaintiff must allege that "(1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

The plaintiff has not plausibly alleged that Oxford engaged in a materially misleading practice or that she was injured as a result.  The plaintiff claims that Oxford deprived her of $150.00 in "dividends," but the plaintiff's own exhibits show that Oxford sent her dividend checks that totaled more than $150.00.  The plaintiff failed to cash these checks before they expired six months after they were issued.  The plaintiff cites no authority, however, indicating that issuing such checks is a materially misleading business practice.  The plaintiff's § 349 claim therefore fails.

B.   The FDCPA

The plaintiff requests that the Court "declare that Oxford violated the FDCPA."  But the Amended Complaint offers no facts in support of this assertion or explanation of how Oxford qualifies as a "debt collector" such that it

can be held liable under the FDCPA.  See 15 U.S.C. §
1692(e).  This allegation therefore fails to state a
plausible claim to relief.

    C.  Oxford LLC

    The Amended Complaint appears to allege that Oxford LLC
should be liable for Oxford's conduct because it owns the
copyright to the letterhead style under which the January Letter
was written and because RMS is attempting to collect a debt on
Oxford LLC's behalf.  This claim fails because the plaintiff has
not adequately pled a cause of action against Oxford.

    Moreover, even if the plaintiff has adequately pled a cause
of action against Oxford, "It is a general principle of
corporate law deeply ingrained in our economic and legal systems
that a parent corporation . . . is not liable for the acts of
its subsidiaries."  United States v. Bestfoods, 524 U.S. 51, 61
(1998) (citation omitted).  A parent corporation may be held
liable for the actions of its subsidiary, however, "when the
subsidiary is merely an alter ego of the parent."  Kiobel v.
Royal Dutch Petroleum Co., 621 F.3d 111, 195 (2d Cir. 2010).
Alter ego liability exists

> when a parent or owner uses the corporate form to
> achieve fraud, or when the corporation has been so
> dominated by an individual or another corporation
> (usually a parent corporation), and its separate
> identity so disregarded, that it primarily transacted
> the dominator's business rather than its own.

Id. (citation omitted).

Owning the copyright to a letterhead style under which a subsidiary or its agent writes an allegedly misleading letter plainly fails to establish alter ego liability under this standard.  Likewise, the plaintiff fails to plead any other facts that give fair notice of plaintiff's basis for asserting Oxford LLC's alter ego liability as to actions by Oxford or RMS.

II.  Motion for Sanctions

In its motion for sanctions, Oxford seeks reasonable attorneys' fees expended in defending the present action, and an injunction against plaintiff and Bentley preventing them from filing any further suits against Oxford or any of its affiliated entities without first seeking leave of the Court.  Federal Rule of Civil Procedure 11(b) provides that an attorney who "present[s]" a pleading to the court thereby certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) [the pleading] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

11

Fed. R. Civ. P 11(b).

Thus, under Rule 11, "an attorney has an affirmative duty to make reasonable inquiry into the facts and the law." Perez v. Posse Comitatus, 373 F.3d 321, 324 (2d Cir. 2004) (citation omitted). "Since the inquiry must be reasonable under the circumstances, liability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers." ATSI Communications, Inc. v. Shaar Fund, Ltd., 579 F.3d 143, 150 (2d Cir. 2009) (citation omitted). "Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy." Kiobel v. Millson, 592 F.3d 78, 83 (2d Cir. 2010) (citation omitted); see also Storey v. Cello Holdings, LLC, 347 F.3d 370, 387 (2d Cir. 2003) (noting that a court must "ensure that any sanctions decision is made with restraint" (citation omitted)).

Sanctions are appropriate in this case because Bentley has repeatedly made frivolous and unsupported filings in this action and in prior actions on behalf of the plaintiff against Oxford. As discussed above, Bentley filed his first lawsuit against Oxford, Rosario I, on September 3, 2010 by filing a seven-word complaint alleging breach of contract and violations of the

12

NYGBL § 349.  After a misguided attempt to remove the case to
the incorrect court, Bentley proceeded to make unsupported
arguments before the district court.  For example, Bentley was
unable to provide the court with any federal case law to support
his claim that state procedural law applies in federal court
notwithstanding the central holding in Erie R. Co. v. Tompkins,
304 U.S. 64 (1938).

After the district court dismissed Rosario I on December
14, 2010, Bentley brought a second action against Oxford
pursuant to NYGBL § 349, Rosario II, in State court on May 22,
2011.  The allegations against Oxford in Rosario II are largely
identical to those at issue in this case.  Rosario II was
summarily dismissed by the State court on November 9 for the
same basic reason the present action is being dismissed: Bentley
does not explain why Oxford should be liable for failing to pay
the plaintiff $150 in dividends when Bentley himself has
submitted evidence establishing that the plaintiff received
dividend checks from Oxford totaling $150.80.

Despite this glaring deficiency in his claims, Bentley
brought a third action against Oxford for alleged violations of
the NYGBL § 349 with the filing of this action on October 21,
2011.  The initial complaint in this action corrected none of
the problems with plaintiff's earlier filings, and included
additional frivolous allegations that Oxford violated the FDCPA

13

and that Oxford LLC should be held liable for unspecified reasons.  After Oxford filed its first motion to dismiss, Bentley was given an opportunity to amend his complaint but again failed to correct its deficiencies.  In light of the foregoing, Bentley's arguments in the Amended Complaint are objectively unreasonable and Rule 11 sanctions against Bentley are justified.

In opposing the motion for sanctions, Bentley makes additional unsupported and frivolous arguments.  He claims that he has withdrawn or appropriately corrected the offending documents identified by Oxford.  Bentley has not done so.

Rule 11 provides that a motion for sanctions must not be filed with the court if the challenged paper is "withdrawn or appropriately corrected" within 21 days after service.  Fed R. Civ. P. 11(c)(2).  Oxford served Bentley with the motion for sanctions on February 21, 2012, and filed the same motion more than 21 days later on March 19, 2012.

Bentley argues that he submitted a Second Amended Complaint and that this corrected any deficiencies in the Amended Complaint.  Bentley did no such thing.  Bentley attached a document titled "Second Amended Complaint" as an exhibit to his opposition to the February 21 motion to dismiss.  This document was never accepted as an amended pleading; the Court at that point had already instructed Bentley, by Order of December 13,

14

that he would have no further opportunity to amend the plaintiff's pleadings.  In any event, the purported "Second Amended Complaint" corrected none of the deficiencies of the Amended Complaint.

Bentley also claims that Oxford failed to abide by Rule 11's 21-day safe harbor because Oxford submitted a Supplemental Declaration alongside its filing of the motion for sanctions. Bentley is wrong.

The motion for sanctions filed before the Court was identical to the motion served on Bentley 27 days prior.  It identified both the Amended Complaint and the February 7 motion to assume supplemental jurisdiction as sanctionable documents. Because Bentley subsequently withdrew the February 7 motion to assume supplemental jurisdiction, Oxford filed a Supplemental Declaration alongside the motion for sanctions indicating that Oxford was no longer pursuing sanctions as to the withdrawn February 7 motion.  The Supplemental Declaration did not alter the contents of the motion for sanctions, however, or render inadequate Oxford's compliance with Rule 11's 21-day safe harbor.

Bentley's remaining arguments attack Oxford for allegedly engaging wrongful conduct.  For example, Bentley faults Oxford for removing the case to federal court and for filing its motions to dismiss.  None of these allegations are relevant to

the question at hand: whether Bentley's conduct is sanctionable under Rule 11.

## CONCLUSION

Oxford and Oxford LLC's February 21 motion to dismiss and Oxford's March 19 motion for sanctions are granted.  The action against Oxford and Oxford LLC is dismissed with prejudice.  The Clerk of Court shall remove Oxford and Oxford LLC as defendants in this case.  Oxford shall be awarded its reasonable attorneys' fees in defending this action.  The plaintiff and Bentley are enjoined from filing any further suits against Oxford or any of its affiliated entities without first seeking leave of the Court.

SO ORDERED:

Dated:    New York, New York
          June 20, 2012

_____
          DENISE COTE
    United States District Judge